# EXHIBIT A

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| MATT JONES, et al. | ) |
|---|---|
| *Plaintiff* | ) |
| v. | ) Civil Action No. 5:22-cv-04486-BLF-SVK |
| | ) |
| PGA TOUR, INC. | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: James Hahn

*(Name of person to whom this subpoena is directed)*

☑ **Testimony:** YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Beale, Michaels, Slack & Shughart P.C.<br>7012 N. 18th Street<br>Phoenix, AZ 85020-5502 | Date and Time:<br>05/01/2023 9:00 am |
|---|---|

The deposition will be recorded by this method: Stenographic, audio, video, real-time reporting

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Attachment A. Please produce any responsive documents by April 25, 2023.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 04/18/2023

*CLERK OF COURT*

OR

_____ _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* LIV GOLF, INC. , who issues or requests this subpoena, are:

Rachel Brass, Gibson Dunn & Crutcher LLP, 555 Mission St., San Francisco, CA 94105, rbrass@gibsondunn.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 5:22-cv-04486-BLF-SVK

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

# DEFINITIONS

For the purposes of interpreting and adhering to the Requests for Production and Instructions herein, the following definitions shall apply:

1. The terms "**You**" and "**Your**" refer to James Hahn, and includes without any limitation any other person or entity acting on Your behalf.

2. "**Augusta National**" means Augusta National, Inc., Augusta National Golf Club, The Masters, members of Augusta National Golf Club, and includes its past and present directors, officers, agents, predecessors, successors, assigns, representatives, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, and affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of Augusta National.

3. "**Communication**," or any variant thereof, means any contact between two or more persons by which any information or knowledge is transmitted or conveyed, or is attempted to be transmitted or conveyed, between two or more persons and shall include, without limitation, written contact by means such as emails, text messages, iMessages, WhatsApp messages, Slack messages, Facebook Messenger, Google Chat, Viber, Signal, Line, WeChat, Snapchat, Telegram, Microsoft Teams, Zoom, social media direct messages, instant messages, letters, memoranda, telegrams, telecopies, telexes, or any other document, and any oral contact, such as face-to-face meetings or telephone conversations.

4. "**Competition Agency**" refers to any Federal or State agency or person charged with enforcing or empowered to enforce competition-related statutes or policies, including but not limited to the Federal Trade Commission and Department of Justice.

5. "**Document**" has the broadest meaning ascribed to it under the Federal Rules of Civil Procedure and includes the original and each non-identical copy of any written, printed, typed, filmed, recorded (electronically or otherwise), or other graphic matter of any kind or description, photographic matter, sound recordings, or reproductions, however produced or reproduced, whether draft or final, as

Gibson, Dunn & Crutcher LLP

well as any summarization, compilation, or index of any documents. The term "document" includes, but is not limited to, letters, memoranda, reports, evaluations, x-rays, work records, studies, analyses, tabulations, graphs, logs, work sheets, work papers, medical records, correspondence, photographs, videotapes, films, slides, negatives, summaries, files, records, Communications, agreements, contracts, invoices, checks, journals, ledgers, telegrams, telexes, hand-written notes, periodicals, pamphlets, computer or business machine printouts, accountants' work papers, accountants' statements and writings, notations or records of meetings, printers' galleys, books, papers, speeches, public relations issues, advertising, materials filed with government agencies, office manuals, employee manuals or office rules and regulations, reports of experts, and any other written matter. A draft or non-identical copy is a separate document within the meaning of this term. Documents shall include any Communication memorialized in written, electronic, or recorded means.

6. "**European Tour**" and/or "**DP World Tour**" means the PGA European Tour, PGA European Tour, Inc., the European Tour, and DP World Tour and includes its past and present directors, officers, agents, predecessors, successors, assigns, representatives, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, and affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of the European Tour. "European Tour" also includes any term, nickname, codename, project name or abbreviation that relate to European Tour or are used by You or Your agents to refer to European Tour.

7. "**LIV Golf**" means LIV Golf, Inc., LIV Golf, Ltd., LIV Golf, Holdings Ltd., LIV Golf Investments Ltd., LIV Golf, LIV Golf International Series, LIV Golf Invitational Series, and includes its past and present directors, officers, agents, predecessors, successors, assigns, representatives, investors, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, and affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of Plaintiff LIV Golf Inc. "LIV Golf" also includes any term, nickname, codename, project name or abbreviation that relate to LIV Golf or are used by You or Your agents to refer to LIV Golf.

8. "**New Tour**" means any prospective or any new professional golf tour or league or promoter of professional golf events, including but not limited to LIV Golf, PGL, SGL, P54, the

prospective entrant(s) identified as "Private Equity Golf" in Commissioner Monahan's January 24, 2020 memorandum to the PGA Tour Policy Board, the entity or entities that Commissioner Monahan has described as the "Saudi Golf League," or any other prospective or actual professional golf promoter or professional golfer services buyer. "New Tour" also includes any term, nickname, codename, project name or abbreviation that relate to a New Tour or are used by You or Your agents to refer to a New Tour or players playing or considering playing in a New Tour.

9. "**OWGR**" means the OWGR, Ltd., Official World Golf Rankings, and includes its past and present directors, members, officers, agents, predecessors, successors, assigns, representatives, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, and affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of the OWGR, Ltd.

10. "**PGA 2.0**," or any variant thereof, means PGA 2.0, PGA Tour 2.0, Project 2.0, or any other term or name used to refer to an entity to own, manage, control, operate, fund, service, administer, or house Designated Events, the Champions Series, or any other asset, tournament, event or asset to be used in conjunction with such Designated Events or the Champions Series or the same concept by another name.

11. "**PGA of America**" or any variant thereof, means the Professional Golfers Association of America (or PGAA), and includes its past and present directors, officers, agents, predecessors, successors, assigns, representatives, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, and affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of the PGA of America.

12. "**PGA Tour**" means PGA Tour, Inc., and includes its past and present directors during the period when they were directors, members of its Policy Board, officers, agents, predecessors, successors, assigns, representatives, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, and affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of PGA Tour, Inc.

13. "**PGA Tour Board of Directors**," or any variant thereof, means the PGA Board of Directors, past or current members of the PGA Tour Board of Directors, PGA Tour Policy Board, and

carries the meaning as that term is used in the PGA Tour Player Handbook and/or the governing documents of the PGA Tour.

14. "**PGA Tour Designated Events**," or any variant thereof, means the professional golf tournaments on the PGA Tour that the PGA Tour has designated for higher purses and which the PGA Tour describes as either "designated events" or "elevated events."

15. "**PGA Tour Player Advisory Committee**," or any variant thereof, means PGA Tour Player Advisory Committee, past or current members of the PGA Tour Player Advisory Committee, and carries the meaning as that term is used in the PGA Tour Player Handbook and/or the governing documents of the PGA Tour.

16. "**Premier Golf League**," "**PGL**," "**Tour de Force**," "**World Golf Series**," or any variant thereof, means Premier Golf League and includes its past and present directors, officers, agents, predecessors, successors, assigns, legal representatives, non-legal representatives, personal representatives, consultants, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, and affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of Premier Golf League. "Premier Golf League" also includes any term, nickname, codename, project name or abbreviation that relate to Premier Golf League or are used by Raine Capital or its agents to refer to Premier Golf League.

17. The phrases "**relate to**," "**related to**," and "**relating to**," or any variant thereof, include, but are not limited to, the following meanings: referring to, supporting, located in, considered in connection with, bearing, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, concerning, opposing, favoring, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, reflecting, analyzing, constituting, and being.

18. "**Royal & Ancient**" or any variant thereof, means the R&A, R&A Championships Limited, Company; R&A Group Services Limited, Company; R&A Rules Limited, Company; The R&A, and includes its past and present directors, officers, agents, predecessors, successors, assigns, representatives, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, and affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of Royal & Ancient.

Gibson, Dunn &
Crutcher LLP

19. **"Strategic Alliance"** or any variant thereof, means the agreement(s) by and between the European Tour and the PGA Tour, and includes but is not limited to the agreements announced in November 2020 and referred to as the Strategic Alliance in the PGA Tour's press release dated November 27, 2020, and as a joint venture in June 2022 . "Strategic Alliance" also includes any term, nickname, codename, project name or abbreviation that relate to Strategic Alliance or are used by You or Your agents to refer to Strategic Alliance.

20. **"TGL"** or any variant thereof, means TGL and includes its past and present directors during the period in which they were directors, officers, agents, predecessors, successors, assigns, legal representatives, nonlegal representatives, personal representatives, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, and affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of TGL.

21. **"This Litigation"** refers to the following action: *Jones, et al. v. PGA Tour, Inc.*, No. 5:22-cv-04486-BLF, filed in the United States District Court for the Northern District of California.

22. **"USGA"** means the United States Golf Association, and includes its past and present directors, officers, agents, predecessors, successors, assigns, representatives, general partners, limited partners, employees, subsidiaries and parent companies, sister companies, and affiliated entities, and also includes individuals and entities who act, have acted, purport to act, or have purported to act on behalf of the United States Golf Association.

23. For purposes of interpreting or construing the scope of the Requests for Production contained herein, all terms shall be given their most expansive and inclusive interpretation. In order to bring within the scope of these Requests for Production all information that might otherwise be construed to be outside of their scope, the following rules of construction apply:

   a. the singular shall include the plural and vice versa;
   b. the masculine, feminine or neuter pronoun shall not exclude other genders;
   c. the connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside its scope;

d. the terms "**any**," "**all**," and "**each**" shall each be construed as encompassing any and all;

e. the word "**including**" shall be read to mean including without limitation;

f. the present term shall be construed to include the past term and vice versa; and

g. references to employees, officers, directors, or agents shall include both current and former employees, officers, directors, and agents.

24. Notwithstanding the above, for any undefined term which You reasonably and on a good-faith basis contend is vague or ambiguous, You shall note the alleged vagueness or ambiguity in Your response and then apply the ordinary dictionary definition of said term, considering the context in which the term is used. Vagueness or ambiguity in this respect shall not be a basis for You to withhold or otherwise fail to search for and produce otherwise responsive Documents or Communications.

## **INSTRUCTIONS**

The following Instructions shall govern Your responses and objections to the Requests for Production contained herein:

1. In responding to these Requests for Production, You should produce all Documents and Communications in Your possession, custody, or control, and all Documents and Communications reasonably available to You, including Documents and Communications in the possession, custody, or control of Your present and former consultants, investigators, accountants, agents, representatives, or other persons acting on Your behalf.

2. All non-privileged Documents and Communications requested herein should be produced in their entirety, with all attachments and enclosures, regardless of whether You consider the attachments and enclosures to be relevant to This Litigation.

3. Documents and Communications responsive to the Requests for Production shall be produced as they have been kept in the ordinary course of business, including the file labels and other identifying information concerning the source or custodian of the Document or Communication.

4. Responsive Documents and Communications should be clearly designated so as to reflect their owner and/or custodian and the location from where they were produced.

5. In the event You are able to produce only some of the Documents called for in a particular Request for Production, You should produce all the Documents and Communications available and state the reason(s) for Your inability to produce the remainder.

6. If there are no Documents or Communications responsive to any Request for Production, You should so state in writing. If a Document or Communication requested is no longer existing or available, You should so state in writing, and identify in detail why such Documents or Communications are unavailable.

7. If You object to a portion of any Request for Production, You should produce all Documents and Communications called for by the portion(s) of the Request for Production to which You do not object.

8. If any responsive Document or Communication is withheld from production under a claim of privilege or other legal protection against disclosure, You shall state for each Document or Communication so withheld:

    a. The claimed nature of the privilege or other ground for withholding disclosure (e.g., attorney client privilege or work product doctrine); and

    b. The following information:

        i. the type of Document or Communication that has been withheld (e.g., letter or memorandum);

        ii. a description of the subject matter of the Document or Communication sufficient to support and explain the basis for the privilege or other legal protection claimed;

        iii. the date of the Document or Communication that has been withheld;

        iv. the author of the Document or Communication and any other recipients, and, where not apparent, the relationship between the author and recipients.

9. If any information is redacted from a Document or Communication produced in response to a Request for Production, You shall identify the redaction by stamping the word "Redacted" on the Document or Communication at each place where information has been redacted and by separately logging for each redaction the grounds for asserting a privilege or other legal protection

against disclosure of the redacted information.

10. Responsive Documents and Communications kept in an electronic form (including, but not limited to, email, web pages, text messages, and .html files) should be retrieved in their native format and produced either in the native format in which they are ordinarily maintained or in a reasonably usable form in accordance with ESI Production Specifications agreed by the parties.

11. Responsive Documents and Communications kept in paper or other non-electronic form should be scanned at a resolution of 300 dots per inch, producing the following:

   a. Single-page ".TIF" image files with Group IV compression. Each .TIF image will be endorsed in the lower-right corner with a unique production number and each .TIF file name will be identical to that production number.

   b. An IPRO ".LFP" image load file containing the physical document boundaries of the original paper documents.

   c. A ".TXT" file containing the OCR (optical character recognition) text of each imaged page or document.

12. These Requests for Production are to be deemed continuing requests, and responsive Documents and Communications that are discovered subsequent to an initial production should nevertheless be promptly produced in the same manner as the initial production.

13. These Requests are not intended to be duplicative. If You produce a Document in response to one Request, then You need not produce it in response to another Request.

14. Unless otherwise specified in a particular Request for Production, the time period relevant for these Requests for Production is September 1, 2019 to the present.

15. You are directed to produce any responsive materials no later than April 25, 2023, and to deliver those materials in the following manners, unless otherwise agreed by the parties:

   a. For electronic Documents and Communications, by emailing or otherwise electronically transmitting them to Rachel Brass at rbrass@gibsondunn.com.

   b. For paper Documents and Communications that cannot be delivered electronically, or which You object to delivering electronically, by mailing or otherwise delivering

8
PLAINTIFF'S SUBPOENA DUCES TECUM TO JAMES HAHN
5:22-cv-04486-BLF

them to the offices of BEALE, MICHAELS, SLACK & SHUGHART P.C., c/o Rachel Brass, 7012 N. 18th Street, Phoenix, AZ 85020-5502.

## REQUESTS FOR PRODUCTION

1. All Communications between You and the PGA Tour, the USGA, the Royal & Ancient, Augusta National, the PGA of America, OWGR, PGA Tour Board members, other PGA Tour Members, and/or the European Tour relating to LIV Golf, Saudi Arabia, the Public Investment Fund of the Kingdom of Saudi Arabia, Majed Al Sorour, Yasir Al-Rumayyan, Golf Saudi, the Premier Golf League, golfers who joined or considered joining LIV Golf or the Premier Golf League, consequences for golfers joining LIV Golf or the Premier Golf League, the PGA Tour's response to potential competition, PGA 2.0, PGA Tour Designated Events, the Strategic Alliance, and/or the TGL.

2. All Communications between You and anyone relating to or referencing a threat, risk, or imposition of a consequence if You or someone else contract with or join LIV Golf or the Premier Golf League.

3. All Documents and Communications relating to your filing a request for release to participate in LIV Golf London.

4. All Documents and Communications relating to Your interest in LIV Golf.

5. All Documents and Communications relating to Your decision to play or not to play in LIV Golf.

6. All PGA Tour Board of Directors Documents and Communications.

7. All PGA Tour Player Advisory Committee Documents and Communications.

## DEPOSITION TOPICS

1. LIV Golf, Premier Golf League, and any other actual or potential PGA Tour competitor, including the PGAT Tour's actual or contemplated response to that actual or potential competitor.

2. Saudi Arabia, the Public Investment Fund of the Kingdom of Saudi Arabia, Majed Al Sorour, Yasir Al-Rumayyan, and Golf Saudi.

3. PGA 2.0, PGA Tour Designated Events, the Strategic Alliance and/or the TGL, as well as the media rights of players who play on the PGA Tour.

4. The PGA Tour Player Board of Directors and the PGA Tour Player Advisory Committee.

Gibson, Dunn & Crutcher LLP

10
PLAINTIFF'S SUBPOENA DUCES TECUM TO JAMES HAHN
5:22-cv-04486-BLF